IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JASON FEIST #80340
          Plaintiff          :

        v.                                 :    CIVIL ACTION NO. WDQ-13-2978
                                              (Consolidated with WDQ-13-3869)
HOWARD COUNTY DETENTION CENTER : 
HOWARD COUNTY GOVERNMENT
UNNAMED OFFICERS                     :
CONMED, INC.
          Defendants        :

**MEMORANDUM OPINION**

On October 9, 2013, Plaintiff Jason Feist ("Feist"), then a detainee housed at the Howard County Detention Center ("HCDC"),[1] filed a document entitled "affidavit" with the Clerk. The document contains a plethora of grievances against HCDC personnel, ranging from denial of an opportunity to place criminal charges on HCDC staff to placement in solitary confinement. The claims were initially dismissed, with one exception; the alleged failure by HCDC staff to provide treatment for Feist's seizure disorder and asthma. ECF No. 1. The case, consolidated with Feist's separate civil rights action naming additional Defendants (ECF No. 7), is ready for dispositive review. Defendant Conmed, Inc., HCDC's medical contractor, has filed a Motion to Dismiss (ECF No. 12), and the Howard County Defendants have filed a Motion to Dismiss or, Alternatively, for Summary Judgment (ECF No. 14),[2] to which Feist has filed an opposition.[3] (ECF 20). A hearing is not needed to resolve this case. *See* Local Rule 105.6 (D. Md. 2014).

---

[1] Feist has been released and now resides in Fort Washington, Maryland. ECF No. 22.

[2] The County Defendants, which include the Howard County Detention Center, Howard County Government, and Unnamed Officers, have supplemented their dispositive motion with medical records placed under seal. ECF No. 18.

[3] Feist's opposition response contains a request for appointment of counsel. ECF No. 20 at 2. A federal district court judge=s power to appoint counsel under 28 U.S.C. ' 1915(e)(1) is discretionary

## Background

On July 25, 2013, Feist was arrested for a violation of probation stemming from a 2009 guilty plea.[4] Unable to post bail, he was held as a pretrial detainee at HCDC pending an October 25, 2013 hearing.[5] ECF No. 14, Affidavit of Jack Kavanagh, Director of the Howard County Department of Corrections. At the time of arrest, he alleges he told staff of his "health issues that could result in the loss of [his] life," but his request to keep his inhaler was denied, and he was

---

and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. District Court*, 490 U.S. 296, 298 (1989). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id.* Feist has shown the wherewithal to articulate the legal and factual basis of his claims himself. The issues pending before the court are not unduly complicated and a hearing is not required. Therefore, there are no exceptional circumstances at this time that would warrant the appointment of an attorney to represent Feist under ' 1915(e)(1).

[4] *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=13K09049124&loc=62&detailLoc=K.

[5] At that hearing, Feist was admitted to Springfield Hospital Center for a determination of mental competency. (ECF 18, pp. 54-55). He was found competent and returned to HCDC on November 22, 2013, where he remained pending adjudication of his probation violation. *Id.*, p. 59. Defendants do not delineate why Feist was referred by the Circuit Court to Springfield. Medical records demonstrate that Feist received mental health services while at HCDC, and was found to suffer a personality disorder and narcissistic traits, but was otherwise competent. (ECF 18, pp. 41-50). Nonetheless, once the matter of a party's competency has been brought to the court's attention, it is required to consider and decide the issue. *See Seibels, Bruce & Co. v. Nicke*, 168 F.R.D. 542, 543 (M.D.N.C. 1996). While Fed. R. Civ. P. 17(c)(2) allows the court to appoint a guardian ad litem, it does not compel it to do so, but rather grants it considerable discretion to issue an "appropriate order" to protect the interest of an unrepresented incompetent litigant.

Examination of Maryland's electronic docket system does not suggest that Feist was found incompetent. Despite his mental health problems, Feist has been able to articulate his claims here. Given Feist's apparent ability, there is no requirement for appointment of a guardian to pursue the claims presented under Fed. R. Civ. P. 17(c)(2).

"refused any health care or help." He further claims that on the night of his arrest, he suffered a seizure and woke up in pain on the floor of his cell, where a nurse only looked at his face "cursorily" and "perhaps [his] blood pressure was taken," and the nurse "refused to help." He had a second seizure when he was returned to his cell and his requests for help were ignored. He states he was taken to "medical" a number of times over the next few days to be given Librium, but again his requests for his inhaler were denied, as was his request to be hospitalized. Feist claims he "filed many grievances which were disregarded." He claims he had a "severe asthma attack" and was "resuscitated" by another inmate who allowed him to use his inhaler. When taken to medical, a nurse stated that nothing was wrong with him. Feist also claims he was "denied one, some, or all" of his medications; he received no medical treatment after he dislocated his shoulder and had to "set" it on his own; he continued to have seizures but was told by HCDC doctors that "they cannot treat every little thing;" and he was subjected "every day" to sleep deprivation as an "advanced interrogation technique." On September 17, 2013, his demands for medication resulted in the administration of only some of his medications. He further states that on several days in September his requests for a nurse to take his blood pressure were repeatedly denied, and in November, after his inhaler ran out, he was repeatedly denied an inhaler and other breathing treatments. ECF No. 1.

Defendants provide medical records to support their argument that Feist received ongoing medical care, beginning on July 26, 2013, the day after he was arrested. Defendants provide progress notes in his medical chart indicating he was seen or assessed by medical staff on July 26, 27, 28, 29, 30, and 31, August 5, 8, 16, 19, 20, and 28, September 5, 6, 10, 11, 15, 16, 17, 18, 19, 20, 21, and 30, October 2, 9, and 24, November 1, 8, and 25, December 1, 2, 3, 9, 12, 13, 14, and 29, 2013, and January 14, 2014. ECF No. 18, Medical Records, Bates # 10, 11 – 14, 16 - 17, 20, 23, 25 – 32, 34 –

43, 45, 46 - 50.[6] Defendants also provide physicians' orders for Feist, dated July 26, August 5, 19, and 28, September 6, 11, 15, 16, and 30, November 1 and 22, and December 1, 2, 13, and 14, 2013. ECF No. 18, Medical Records, Bates # 2 – 7. Medical staff ordered laboratory work for Feist on August 8 and an x-ray on December 2, 2013. ECF No. 18, Medical Records, Bates # 51-52. Defendants also submit medication records showing every time Feist was administered medication. Medical Records Bates # 59 – 76. Finally, Defendants state that Feist refused medical treatment on several occasions. ECF No. 18, Medical Records, Bates # 18, 21, 22, and 24.

## Standard of Review

Defendant Conmed, Inc., the contractual health care provider for HCDC, has moved to dismiss. ECF No. 12. A motion to dismiss or for summary judgment has also been filed on behalf of the Howard County Government and the Howard County Detention Center. ECF No. 14.

"'The purpose of a Rule 12(b)(6) motion [to dismiss] is to test the sufficiency of a complaint.'" *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). A Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts that the plaintiff alleges are true, the complaint fails, as a matter of law, "to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). Therefore, in considering a motion to dismiss under Rule 12(b)(6), a court must "'accept[ ] as true the well-pled facts in the complaint and view[ ] them in the light most favorable to the plaintiff.'" *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011) (citation omitted).

Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450

---

[6] Citation to the medical record follows the designation provided by counsel for the County Defendants.

(4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."). This court deems it appropriate to consider the extraneous medical record and the affidavit submitted by HCDC's Director, as they are likely to facilitate disposition of this case.[7] Accordingly, the motion submitted on behalf of the County Defendants shall be treated as a motion for summary judgment.

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

---

[7] A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d Ed. 2004). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided in this determination by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165–67. For reasons apparent herein, discovery is not required to resolve this case.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). At the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)) (internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). This case shall be analyzed in light of this standard of review.

## Analysis

Preliminarily, the Court notes that Conmed, Inc., the contractual health care corporation whose employees provide medical care at HCDC, is named a defendant solely under a theory of vicarious liability, otherwise known as the doctrine of respondeat superior. The law in the Fourth Circuit is well established that the doctrine is inapplicable to § 1983 claims involving entities such as Conmed, Inc. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D. Md., October 22, 1992), citing *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991). Conmed, Inc. shall be dismissed from this case.

The named County entities likewise are entitled to dismissal. Under § 1983, liability is imposed on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights . . . ." 42 U.S.C. § 1983. The statute requires a showing of *personal* fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir.1987), rev'd on other grounds, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977) (in order for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights ...") (quoting *Bennett v. Gravelle*, 323 F.Supp. 203, 214 (D. Md. 1971), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). Neither HCDC nor the Howard County Government are "persons" within the meaning of the Civil Rights Act. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989); *see also Powell v. Cook County, Jail*, 814 F. Supp. 757 (N.D. Ill. 1993); *Marsden v. Fed. Bureau of Prisons*, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) ("jail not an entity amenable to suit"). They are therefore subject to dismissal pursuant to Fed R. Civ. P. 12(b)(6).

Feist has failed to name Defendants amenable to suit. Mindful that he is self-represented, this Court must liberally construe his pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pleadings filed by pro se litigant held "to less stringent standards than formal pleadings drafted by lawyers."). Thus, dismissal of the named Defendants does not end this Court's inquiry. The County Defendants have provided medical records which the Court has examined to determine whether any unnamed Conmed or County employee may have violated Feist's right to medical care during his pretrial detention at HCDC.

At the time of his arrest pending the adjudication of a probation violation, Feist was a pretrial detainee.[8] This distinction is not material, however, because the constitutional protections afforded a pretrial detainee as provided by the Fourteenth Amendment are co-extensive with those provided to convicted prisoners by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992), citing *Martin v. Gentile*, 849 F. 2d 863, 870 (4th Cir. 1988). As a practical matter, the Fourth Circuit does not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's civil rights claim. *See Hill v. Nicodemus,* 979 F.2d 987, 990-92 (4th Cir. 1992).

The inquiry with respect to Feist's medical care is whether the care amounted to punishment, as due process proscribes punishment of a detainee before proper adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In order to state a claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

---

[8] Feist's probation violation charge was adjudicated and he was released from confinement on March 24, 2014.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) quoting *Farmer*, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000), citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

HCDC's Director, Jack Kavanagh, submitted an affidavit concerning Feist's medical care. ECF No. 14-2. Kavanagh stated that after Feist claimed he had not received medications, Kavanagh personally reviewed a videotape showing a correctional officer attempting without success to get Feist out of bed to go to the medical unit to take his scheduled medications. Kavanagh then directed that Feist be temporarily placed in the medical observation unit, located with the HCDC medical suite, which allows patients with medical issues to be more closely monitored. During the time that Feist was in the medical unit, from September 19 to September 25, 2013, Feist had no medical complaints. The medical records indicate his vital signs were checked daily, and denote several instances where Feist declined treatment. Kavanagh also stated that Feist was monitored through HCDC's chronic care program, which is aimed at

providing ongoing medical care for inmates with chronic illnesses by setting appointments with medical staff at least every three months for follow up for their chronic medical conditions. *Id.*

Examination of the 76-page medical record, which is unopposed, supports Kavanagh's statements. Feist received albuterol nebulizer treatments at the medical unit when he experienced breathing problems, and received an inhaler to keep with him on at least one occasion. ECF No. 18 at 3. He received mental health evaluation and treatment, including medications. *Id.* at 41-50. His alleged tendon injury was treated and pain medication provided. *Id.* at 3, 19-20. His complaint of shoulder dislocation was treated and an x-ray revealed the shoulder was normal. *Id.* at 51. The undisputed evidence establishes there is no basis for Feist's claim that his constitutional rights were violated.

Accordingly, Defendants' dispositive motions shall be granted, by separate Order to follow

7/22/14
(Date)

William D. Quarles, Jr.
United States District Judge